## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

                Plaintiff,

vs.

THE CLEMENS COAL COMPANY,
DENNIS WOOLMAN,
and CLAYTON SPENCER

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 14-CV-02332-CM-JPO

## DEFENDANT DENNIS WOOLMAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ENSZ & JESTER, P.C.

_____

JAMES H. ENSZ             KS #13040
ROBERT O. JESTER      KS FED #70451
WESLEY J. CARRILLO      KS #23984
2121 City Center Square
1100 Main Street
Kansas City, MO  64105
Telephone:    816-474-8010
Facsimile:    816-471-7910
E-mail:      jensz@enszjester.com
              rjester@enszjester.com
              wcarrillo@enszjester.com
**ATTORNEYS FOR DEFENDANT
DENNIS WOOLMAN**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTORY STATEMENT ................................................................................ 1

STATEMENT OF THE ISSUES.................................................................................... 3

STATEMENT OF UNCONTROVERRTED AND CONTROVERTED
MATERIAL FACTS...................................................................................................... 3

    A.  Defendant Woolman's Response To Plaintiff's Concise Statement Of
        Material Facts As To Which No Genuine Issue Exists ................................... 3

    B.  Defendant Woolman's Additional Concise Statement Of Material Facts
        As To Which No genuine Issue Exists .......................................................... 5

ARGUMENTS AND AUTHORITIES......................................................................... 10

STANDARD OF REVIEW .......................................................................................... 10

    A.  Liberty Mutual is estopped from denying black lung coverage because
        Mr. Woolman and Clemens Coal relied on Liberty Mutual's
        representation and implied promise of coverage........................................... 11

        1.  Equitable Estoppel............................................................................... 11

            a.  Misrepresentation by Agent Smith's Actions ......................... 12

            b.  Agent Smith Was Silent When She Had A Duty To
               Speak ....................................................................................... 13

            c.  Mr. Woolman and Clemens Coal's Reliance & Prejudice........ 13

        2.  Promissory Estoppel............................................................................. 14

            a.  Liberty Mutual's Promise and Mr. Woolman's Reliance ......... 14

            b.  Substantial Injustice ................................................................ 16

B.  Liberty Mutual's licensed insurance agent, Agent Smith, breached her duty of care as a licensed insurance agent when she failed to provide the requested coverage and advise Mr. Woolman and Clemens Coal of its risks and appropriate insurance coverage ...................................................... 16

    1.  Liberty Mutual's Duty .............................................................. 17

    2.  Breach of Duty ........................................................................ 17

    3.  Casual Connection and Damages ............................................ 20

C.  Summary judgment must be denied because Liberty Mutual's failure to produce the Workers Compensation Submission form which was provided to its underwriter could lead a reasonable jury to conclude the information it contained was adverse to Liberty Mutual ................................ 20

CONCLUSION ................................................................................................... 22

CERTIFICATE OF SERVICE............................................................................ 23

## TABLE OF AUTHORITIES

### CASES

*Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242 (10th Cir. 2000) .............. 10

*Bouton v. Byers*, 50 Kan.App2d 35, 44, 321 P.3d 780 (2014) ........................................ 12,14,15,16

*Calwell v. Hassan*, 260 Kan. 769, 778, 925 P.2d 422 (1996) ........................................ 16

*Deal v. Bowman*, 286 Kan. 853, 858, 188 P.3d 941 (2008) ........................................ 16,17

*Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*,
220 F.3d 1184 (10th Cir. 2000) ........................................................................................ 11

*Farha v. City of Wichita*, 284 Kan. 507, 510, 161 P.3d 717 (2007) ................................ 21

*Kincaid v. Dess*, 48 Kan.App.2d 640, 653, 54, 298 P.3d 358 (2013) .............................. 12

*Londerhold v. Unified Sch. Dist.No. 500*, 199 Kan. 312, 324, 430 P.2d 188 (1967) .................... 21

*Marshel Investments, Inc. v. Cohen*, 6 Kan. App. 2d 672, 683, 634 P.2d 133 (1981) .................. 17

*Mohr v. State Bank of Stanley*, 244 Kan. 555, 574, 770 P.2d 466 (1989) ...................................... 14

*Mut. Life Ins. Co. of New York v. Bernasek*, 235 Kan. 726, 729-30, 682 P.2d 667 (1984) ........... 11

*Shirley v. Glass*, 44 Kan.App.2d 688, 241 P.3d 134 (2010) ......................................................... 21

### RULES

20 C.F.R. § 726 ........................................................................................................... 10

**DEFENDANT WOOLMAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
SUGGESTIONS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, defendant Dennis Woolman ("Mr. Woolman"), by and through undersigned counsel, and in opposition to Plaintiff's Motion for Summary Judgment and Suggestions in Support thereof, states as follows:

## I.    INTRODUCTORY STATEMENT

The issues presented by this case are not as simple as the plaintiff, Liberty Mutual Fire Insurance Company ("Liberty Mutual") would have this Court believe. At the heart of this case are the actions of Liberty Mutual's employee, Debbie Smith, and how Mr. Woolman, through Clemens Coal's agents, was made to believe the policy Liberty Mutual developed was lawful and would meet Clemens Coal's needs as a coal company. Mr. Woolman, and others at Clemens Coal, relied on the misrepresentations by Agent Smith and as a result, did not renew its previous insurance coverage, choosing instead to purchase insurance from Liberty Mutual. The result of Liberty Mutual's misrepresentation was the denial of insurance coverage which existed prior to Mr. Woolman's and Clemens Coal's reliance on Liberty Mutual's misrepresentation.

In 1996, Clemens Coal enjoyed Black Lung insurance coverage through an assigned risk plan with The Hartford. [Exhibit E, Ronald V. Srajer Affidavit, ¶¶ 3-6]. At some point near the end of that policy, Clemens Coal, through Mr. Jim Worley, began reviewing quotes for insurance coverage. [Exhibit G, Worley Deposition, tr. 13:17-19]. Liberty Mutual, through Agent Smith, provided a quote to Mr. Worley and Clemens Coal eventually chose to insure its risks through Liberty Mutual. Agent Smith is a licensed insurance agent. [Exhibit F, Smith Deposition, tr. 19:24 – 20:2].

Neither Agent Smith nor Mr. Worley recall any specific conversations regarding Liberty Mutual's preparation or Clemens Coal's acceptance of the policy. [Exhibit G Worley Deposition, tr. 26:20-24] and [Exhibit F, Smith Deposition, tr. 21:25 – 22:2]. However, it has been established that Agent Smith, when she is endeavoring to sell insurance to a prospective client, would routinely copy the then-existing insurance policy of the prospective client in an effort to prepare a quote of insurance. [Exhibit F, Smith Deposition, tr. 28:19 – 29:1 and 62:21-24]. Agent Smith would then submit the submission forms for each type of coverage to Ms. Trent, Liberty Mutual's underwriter who would use the submission forms to determine the premiums. [Exhibit D, Trent Deposition, tr. 27:4-7]. Notably, Liberty Mutual failed to produce the Submission Form for the Workers compensation Policy at issue despite being able to produce others. [Exhibit D, Trent Deposition, tr. 27:4-7].

Mr. Worley relied on licensed insurance professionals, who solicited Clemens Coal's business, to know and provide the necessary coverage for a coal company. [Exhibit G, Worley Deposition, tr. 29:6-12 and 30:19-21]. Agent Smith did not know Black Lung coverage was necessary for a coal company and did not research what types of coverage were necessary for a coal company. [Exhibit F, Smith Deposition, tr. 31: 13-23 and Exhibit I, Smith Deposition Exhibit 2].

Clemens Coal insured its risk with Liberty Mutual and, as a result, Mr. Woolman was personally exposed to liability when a former employee, Mr. Clayton Spencer, filed and succeeded on a black lung claim.

## II.   STATEMENT OF THE ISSUES

A.   Liberty Mutual is estopped from denying black lung coverage because Mr. Woolman and Clemens Coal relied on Liberty Mutual's representation and implied promise of coverage.

B.   Liberty Mutual's licensed insurance agent, Agent Smith, breached her duty of care as a licensed insurance agent when she failed to provide the requested coverage and advise Mr. Woolman and Clemens Coal of its risks and appropriate insurance coverage.

C.   Summary judgment must be denied because Liberty Mutual's failure to produce the Workers compensation Submission Form which was provided to its underwriter could lead a reasonable jury to conclude the information it contained was adverse to Liberty Mutual.

## III.   STATEMENT OF UNCONTROVERTED AND CONTROVERTED MATERIAL FACTS

A. Defendant Woolman's Response To Plaintiff's Concise Statement Of Material Facts As To Which No Genuine Issue Exists.

1.   Admitted.

2.   Admitted.

3.   Admitted.

4.   Admitted.

5.   Admitted.

6.   Denied, as stated.  Defendant Woolman testified that he wanted full coverage for Workmen's Comp.  He did not know what full coverage was but that was what he wanted and he assumed the Liberty Mutual Policy Workers compensation Coverage would meet legal

3

requirements because that is how they ran their business. [Exhibit A, Woolman Deposition, tr. 45:22-24 and 48:15-18]. Defendant Woolman did not testify as indicated in Concise Statement No. 6.

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Admitted.

17.    Admitted.

18.    Admitted.

19.    Admitted.

20.    Denied.  The testimony of expert witness Gerald Haake was qualified in his deposition because he had not been provided Jim Worley's or Dennis Woolman's depositions prior to his deposition being taken on July 1, 2015.  This Concise Statement is inconsistent with expert Haake's Supplemental Report. [Exhibit B, Gerald C. Haake Deposition, tr. 28:7-10 and Exhibit C, Supplemental Report of Gerald C. Haake].

21.    Denied, as stated.  The Underwriter, Diana Trent, testified that in 1996 she was aware that Liberty Mutual did not like to issue the Black Lung Endorsement but she did not

4

know if she knew exactly that it should not be offered.  Ms. Trent also was not aware of the Federal Coal Mine Safety and Health Act in 1996 and did not become aware of it until approximately 2013.   [Exhibit D, Trent Deposition, tr. 48:13-24 and 51:3 – 54:14].

**B.     Defendant Woolman's Additional Concise Statement Of Material Facts As To Which No Genuine Issue Exists.**

1.      Ronald V. Srajer, who was a Vice President at IMA, Inc. and was the Account Representative for The Clemens Coal Company in 1994 through 1996, by Sworn Affidavit states that the Travelers Policy issued to The Clemens Coal Company for November 1, 1994, to November 1, 1995, contained the Federal Coal Mine Health and Safety Act Coverage Endorsement and that the Hartford Policy issued to The Clemens Coal Company for November 1, 1995, to November 1, 1996, contained the Federal Coal Mine Health and Safety Act Coverage Endorsement. [Exhibit E, Affidavit of Ronald V. Srajer].

2.      Ronald V. Srajer further indicates in his Affidavit that he was a licensed Kansas Insurance Agent from 1974 to 2004 and that he believes himself to be a reasonably prudent and competent insurance agent. [Exhibit E, Affidavit of Ronald V. Srajer].

3.      Debbie Smith, the Agent on the Liberty Mutual Policy sold to The Clemens Coal Company, began work with Liberty Mutual on September 2, 1986, and was in the Commercial Sales Division of Liberty Mutual, which was a direct seller of insurance, and she would have been in the Commercial Sales Division for Liberty Mutual when the Workers compensation Policy was sold to The Clemens Coal Company with a policy term beginning November 1, 1996, and she is listed as the Agent on the policy. [Exhibit F, Smith Deposition, tr. 11:17 – 15:10].

4.      Agent Smith was licensed by the State of Kansas as an Insurance Agent. [Exhibit F, Smith Deposition, tr. 19:24 – 21:8].

5.      Agent Smith does not have any memory of her contact with The Clemens Coal Company and even thought she is listed as the Agent on the policy of insurance, she has no memory of contact with that company. [Exhibit F, Smith Deposition, tr. 21:17 – 23:3].

6.      Agent Smith testified that her standard procedure was to ask for copies of the prospective insured's past policies and those policies framed the proposal for the new policy by relying on the past policies because Agent Smith would take the past policy and ask the Underwriting Department to duplicate it. [Exhibit F, Smith Deposition, tr. 28:19 – 30:3 and tr. 62:21-24].

7.      Agent Smith did not know what a Black Lung Endorsement was before November of 1996, did not know that the Federal Coal Mine Safety and Health Act applied to a coal company's insurance requirements and did no research on the Black Lung Endorsement. [Exhibit F, Smith Deposition, tr. 31:9-23].

8.      Agent Smith testified that even if the Underwriter had brought to her attention that Liberty Mutual is not to offer Black Lung coverage, she would not have contacted The Clemens Coal Company and advised them that the coverage could not be offered and she felt she had no responsibility to advise a potential insured what coverage they should have nor would she investigate their business pursuits enough to make any recommendations as she was basically the happy face that walked in and said "Could I sell you some insurance" and then got the past policy and made a proposal based on duplicating it. [Exhibit F, Smith Deposition, tr. 60:18 – 64:14].

9.      Diana Trent, the Underwriter on The Clemens Coal Company Liberty Mutual Policy, testified that she developed the premiums for the coverages based on submissions sent to her by Agent Smith. [Exhibit D, Trent Deposition, tr. 27:4-7].

6

10. Underwriter Trent indicates that the agents should have sat down with the potential insured and reviewed the coverage submission form before sending it to the Underwriter. [Exhibit D, Trent Deposition, tr. 30:19 – 31:1].

11. Underwriter Trent indicated that she did not make coverage recommendations to an Agent and that in her capacity as Underwriter she accepted what the Agent sent to her and created a premium based on what she was given and if she was not given a particular endorsement to add to a policy, she did not consider it nor did she notify the Agent that they may want to consider offering a particular endorsement to a potential insured, as she did not feel that was her responsibility. [Exhibit D, Trent Deposition, tr. 49:7 – 50:7].

12. Liberty Mutual was able to produce several, but not all, of the Submission Forms for the various types of coverage quoted and provided to The Clemens Coal Company [Exhibit J, Trent Deposition, Exhibit 2].

13. Underwriter Trent confirmed that Liberty Mutual should have had a Work Comp Submission Form in its Underwriting File with reference to The Clemens Coal Company account but she was unable to locate one and had no explanation as to why it was missing from the policy documents produced by Liberty Mutual. [Exhibit D, Trent Deposition tr. 27:8 – 28:1].

14. The Workers Compensation Submission Form could provide evidence whether or not Agent Smith or Ms. Trent made any remarks concerning Black Lung coverage. [Exhibit B, Haake Deposition, tr. 50:4-14].

15. Jim Worley, Controller, was requested by his employer, Buildex, to assist The Clemens Coal Company with respect to financial matters and in that capacity he was involved in procurement of insurance for The Clemens Coal Company for the term 1996 to 1997. [Exhibit G, Worley Deposition, tr. 11:24 – 13:14].

7

16.    Mr. Worley does not remember any specific conversations with Liberty Mutual Company representatives with reference to The Clemens Coal policy for 1996 to 1997. [Exhibit G, Worley Deposition, tr. 26:20-24].

17.    Mr. Worley indicated that his philosophy was that he wanted the necessary required coverages that provided the best coverages for the employees of The Clemens Coal Company for the least amount of money and that he relied on the agent to provide those coverages. [Exhibit G, Worley Deposition, tr. 29:6-12].

18.    Mr. Worley, in his capacity as Controller, believed that if one was going to sell insurance to the coal industry that one should definitely have knowledge of that industry, which in the case of The Clemens Coal Company, would have been the insurance requirement of Black Lung Disease coverage.  [Exhibit G, Worley Deposition, tr. 30:1-21].

19.    Mr. Worley believed from his background that an insurance agent trying to market a product to a coal company should have been aware of the necessity of having a Black Lung Endorsement and believed that that was the responsibility of the agent and the agent's insurance company. [Exhibit G, Worley Deposition, tr. 31:15-25].

20.    Woolman's expert, Gerald Haake, indicates that an insurance agent has a responsibility to know the specific insurance needs related to a potential insured's industry and tell that potential insured if that coverage cannot be provided, which was not done by Liberty Mutual or its agent. [Exhibit B, Haake Deposition, tr. 17:1-10].

21.    Woolman's expert, Gerald Haake, finds that the Liberty Mutual Commercial Sales Agent, Debbie Smith, failed to meet even the minimal skills, care and diligence that a reasonable, prudent and competent insurance agent or broker would have exercised in obtaining coverage for The Clemens Coal Company. [Exhibit C, Haake Supplemental Report.]

8

22.    Liberty Mutual's expert, Robert Bryan Tilden, Jr., testified that we could agree that the instructions of the customer, potential insured, would be the tendering of the past insurance policy or policies to the Liberty Mutual Agent and he indicated that it appeared from the testimony that was what was done. [Exhibit H, Tilden Deposition, tr. 42:2-7].

23.    Expert Tilden testified that the Underwriter or Commercial Sales Agent had an obligation to give a potential insured notice if the insurance carrier was not going to follow the instructions given to it to provide a particular coverage and in this case, the instructions from the potential insured (The Clemens Coal Company) were in the form of the past policy or policies given to the Liberty Mutual Agent. [Exhibit H, Tilden Deposition, tr. 47:10-23].

24.    Expert Tilden testified that the insurance agent, Debbie Smith, would have an obligation to review with a potential insured (The Clemens Coal Company) the coverages available to that insured for their particular industry if asked. [Exhibit H, Tilden Deposition, tr. 58:14-18].

25.    When asked, the expert Tilden testified that if the past policy tendered by the insured to the Sales Agent, Debbie Smith, contained the Black Lung Endorsement then the policy sold to Clemens Coal Company for 1996 to 1997 should have contained the Black Lung Endorsement. [Exhibit H, Tilden Deposition, tr. 63:11-20].

26.    Expert Tilden, when asked if there is a duty to exercise care on the part of an agent, such as Debbie Smith, and if she had picked up the past policy and copied it and proceeded to duplicate that coverage per the understanding with Clemens Coal then she had a duty to exercise care in that process and that she would have had a responsibility to follow the insured's instructions so if the insured had instructed her to duplicate the policy and if she did not duplicate it then she would have breached her duty of care to that insured. Expert Tilden

indicated, yes, assuming that Agent Smith did not disclose the difference in coverage. [Exhibit H, Tilden Deposition, tr. 88:18 – 89:10].

27. 20 C.F.R. § 726.1 provides that a coal company must qualify as a self-insured or maintain a commercial insurance contract to secure the payment of black lung benefits. [Exhibit I, § 726 of the Code of Federal Regulations].

28. 20 C.F.R. § 726.202 provides that every coal mine operator who is not self-insured must insure the payment of benefits with a company authorized to insure workmen's compensation. [Exhibit I, § 726 of the Code of Federal regulations].

29. 20 C.F.R. § 726.203 provides the form of endorsement to be attached to the standard workmen's compensation coverage. [Exhibit I, § 726 of the Code of Federal regulations].

30. 20 C.F.R. § 726.204 provides that policy obtained to comply with the Act must provide that bankruptcy of the operator does not relieve the carrier of liability. [Exhibit I, § 726 of the Code of Federal regulations].

31. 20 C.F.R. § 726.204 provides that if a coal mine operator fails to secure black lung benefits that the president, secretary and treasurer of the operator shall be severally liable for the penalty due to the failure. [Exhibit I, § 726 of the Code of Federal regulations].

## IV.  ARGUMENTS AND AUTHORITIES

### Standard of Review

Summary judgment is not appropriate for this case. "Summary judgment is appropriate only if there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." *Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (internal citations omitted). If a fact, under the substantive law,

10

could have an effect on the outcome of the lawsuit, it is "material." *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). If a rational jury could find in favor of the nonmoving party on the evidence presented, an issue is "genuine." *Id.* The Court must draw all reasonable inferences in the light most favorable to the nonmoving party, in this case, Mr. Woolman. *Id.*

**A.     Liberty Mutual is estopped from denying black lung coverage because Mr. Woolman and Clemens Coal relied on Liberty Mutual's representation and implied promise of coverage.**

Liberty Mutual's Motion for summary judgment as it relates to Mr. Woolman's estoppel defense must be denied.  Whether Liberty Mutual or its agents misrepresented, either by its silence, implied promise, or otherwise, that it was providing Black Lung coverage is a genuine issue of material fact that must be left to the fact finder to decide. Likewise, whether or not Mr. Woolman, or agents of Clemens Coal, reasonably relied on such a misrepresentation presents a genuine issue of material fact which must also be determined by the fact finder.

There are two types of estoppel which Mr. Woolman asserts as an affirmative defense, equitable estoppel and promissory estoppel. Each will be addressed in turn.

### 1. Equitable Estoppel

"A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or *silence when it had a duty to speak*, induced [the party] to believe certain facts existed." *Mut. Life Ins. Co. of New York v. Bernasek*, 235 Kan. 726, 729-30, 682 P.2d 667, 671 (1984) (emphasis added). Further, the party asserting equitable estoppel must also "show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Id.* "Actual fraud, bad faith or an attempt to mislead or deceive *is not* essential to create an equitable estoppel . . . ." *Id.* (Emphasis

added). "The reasonableness of a party's actions, including reliance on statements of another party, typically reflects a fact question reserved for the fact finder." *Bouton v. Byers*, 50 Kan.App2d 35, 44, 321 P.3d 780, 788 (2014) (citing *Kincaid v. Dess*, 48 Kan.App.2d 640, 653, 54, 298 P.3d 358 (2013)).

### a. Misrepresentation by Agent Smith's Actions

Agent Smith, Liberty Mutual's selling agent, acted in such a way which could enable a reasonable jury to conclude that she misrepresented the coverage under Liberty Mutual's policy. Agent Smith testified that while she did not remember specifically selling the policy at issue, her typical procedure was to make copies of a prospective client's then-existing policy to determine what coverage is necessary. [Exhibit F, Smith Deposition, tr. 29: 6-11]. Clemens Coal's then-existing policy contained a Black Lung Endorsement. [Exhibit E, Ronald V. Srajer Affidavit, ¶ 6]. The clear inference to be drawn from Agent Smith's typical procedure when soliciting clients, and the fact Clemens Coal's then-existing policy contained the endorsement, is that Liberty Mutual knew or should have known Clemens Coal needed and wanted Black Lung coverage and would include all the same coverage in its quoted policy as was in the then-existing policy.

Evidence of habit or routine, such as Agent Smith's typical procedure when soliciting new clients, could lead a reasonable jury to conclude that Agent Smith conformed to her habit on this particular occasion and made copies of Clemens Coal's then-existing insurance policy, which included Black Lung coverage. A reasonable jury could then further conclude that such an action constituted a misrepresentation or implied promise to Mr. Woolman and Clemens Coal that the new coverage should have included its then-existing coverage.

12

### b. Agent Smith Was Silent When She Had a Duty to Speak

Agent Smith's admitted ordinary process for selling insurance put her on notice that the Black Lung Endorsement is a desired if not necessary coverage for Clemens Coal. Because Agent Smith was put on notice, she had a duty as a licensed insurance agent to inquire further and discuss such coverage with her potential client (the duty of an insurance agent is discussed in more depth in subsequent portions of this brief). A genuine issue of material fact exists as to whether Agent Smith failed to speak when she had a duty.

Agent Smith testified she did not know what a Black Lung Endorsement was and did not research such an endorsement. [Exhibit F, Smith Deposition, tr. 31:13-23]. The reasonable inference to be drawn from Agent Smith's complete lack of familiarity with the Black Lung Endorsement, or interest in apprising herself of its importance, is that she did not find it important enough to express to Mr. Woolman, Mr. Worley, or any other agent of Clemens Coal, that such an endorsement, which it enjoyed under its then-existing policy, would be unavailable with Liberty Mutual. A reasonable jury could conclude that Agent Smith was silent, and such silence, based on all the circumstances of her solicitation of Clemens Coal's business, constituted a misrepresentation and should preclude Liberty Mutual from now denying coverage.

### c. Mr. Woolman and Clemens Coal's Reliance & Prejudice

Mr. Woolman, Clemens Coal, and its agents clearly relied on the misrepresentations described above. Mr. Worley, the individual who managed the insurance procurement for Clemens Coal, testified he relied on the insurance agent to provide the necessary coverage because the insurance agent should know the requirements of an industry from which it solicits business. (Exhibit G, Worley Deposition, tr. 29:6-12 and 30:19-21). Whether or not Mr. Worley's reliance was rightful or reasonable, is a genuine issue of fact which must be left to a

jury to decide and is not appropriate for summary judgment. *Bouton*, 50 Kan.App2d 35, 43, 321 P.3d 780, 788 (2014).

Mr. Woolman was prejudiced. There can be no question, that because a president of a corporation is held liable absent Black Lung coverage under 20 C.F.R. § 726.300, and because Mr. Spencer has made a successful claim for black lung damage, that the failure of Liberty Mutual to provide Black Lung coverage prejudiced Mr. Woolman by exposing him to personal liability.

Mr. Woolman has provided evidence of each and every element of equitable estoppel. Genuine issues of material fact exist as to whether a misrepresentation was made, and whether reliance on that misrepresentation was reasonable. As a result, this Court must not enter summary judgment in favor of Liberty Mutual.

## 2. <u>Promissory Estoppel</u>

Liberty Mutual, by its acts, impliedly promised that the coverage under its quoted policy would be substantially the same as Clemens Coal's then-existing policy. The elements of promissory estoppel are: (1) a promisor reasonably expects a promisee to act in reliance on a promise; (2) the promisee, in turn, reasonably so acts; and (3) a court's refusal to enforce the promise would countenance a substantial injustice. *Bouton v. Byers*, 50 Kan. App. 2d 35, 41, 321 P.3d 780, 787 (2014) (citing *Mohr v. State Bank of Stanley,* 244 Kan. 555, 574, 770 P.2d 466 (1989)).

### a. **Liberty Mutual's Promise and Mr. Woolman's Reliance**

Evidence exists to support the first two elements of promissory estoppel. As explained above, the fact that Agent Smith ordinarily copied the then-existing policy of a potential customer to develop an insurance quote evidences an implied promise that such a quote would

14

incorporate the coverage which already existed. Moreover, the common-knowledge purpose of providing a quote is to give a potential customer a stated price on which it can rely, and to induce a customer in choosing its insurance. Further, Mr. Woolman and Mr. Worley relied on such a promise to Mr. Woolman's detriment because they were induced to purchase Liberty Mutual insurance while knowing Clemens Coal, as a coal company, was required to maintain Black Lung coverage in accordance with federal law. [Exhibit G, Worley Deposiiton, tr. 29:6-12 and 30:19-21]. Clearly, evidence exists to support the first two elements of promissory estoppel. The only question remaining then is whether reliance on Agent Smith's implied promise was reasonable; a question which is an issue of fact that is inappropriate for summary judgment. *Bouton*, 50 Kan.App2d 35, 43, 321 P.3d 780, 788 (2014).

In *Bouton*, a daughter sued her father for promissory estoppel because she claimed he had promised her he would bequeath land worth more than a million dollars upon his death if she would leave her employment as a law school professor and help operate his ranch. Bouton left her position to move to the ranch and begin the operations of her father, Byers. Sometime thereafter, Byers sold portions of his ranch, leaving inadequate land to fulfill his promise to Bouton. Bouton sued under a theory of promissory estoppel but the district court entered summary judgment in Byer's favor determining the evidence failed to show both a definite promise from Byers and a reasonable reliance by Bouton. See *Bouton*, 50 Kan.App.2d 35, 321 P.3d 780, 786 (Kan. App. 2014).

In reversing the district court, the Kansas Court of Appeals determined the standard of review required it to "accept Bouton's assertion that Byers made" the alleged representation "although [Byers] denies having done so." *Id.* at 787. The Court went on to rule that reasonableness of reliance is "quintessentially a fact question." *Id.* at 789. Here, Liberty Mutual

15

denies it made a representation that the Black Lung coverage would be included in its policy, just as Byers denied he promised Bouton land. However, just as in *Bouton*, this Court must accept Mr. Woolman's assertion that Liberty Mutual represented the Black Lung coverage would remain based on Agent Smith copying the then-existing policy in preparation of her quote. Whether Mr. Woolman or Clemens Coal and its agents reasonably relied on an implied promise would undoubtedly have an effect on the outcome of the Promissory Estoppel claim, making such an issue material. Further, whether reliance on such an implied promise was reasonable is a genuine question of fact as a reasonable jury could find in favor of Mr. Woolman. Thus, summary judgment is not appropriate.

### b. Substantial Injustice

The third and final step of promissory estoppel requires that the Court's refusal to enforce the implied promise of coverage results in a substantial injustice; such is true in this case. As stated above, 20 C.F.R. § 726.300 will hold Mr. Woolman personally liable for a black lung claim if Liberty Mutual's implied promise is not enforced. Holding an individual personally liable on a claim against a company for which he acted as president, when he was made to believe he possessed the proper insurance to cover such claim, is substantially unjust.

**B.**     **Liberty Mutual's licensed insurance agent, Agent Smith, breached her duty of care as a licensed insurance agent when she failed to provide the requested coverage and advise Mr. Woolman and Clemens Coal of its risks and appropriate insurance coverage.**

Liberty Mutual's employee breached her duty as licensed insurance agent/broker. To establish an action for negligence, one must show: (1) duty owed by one person to another, (2) breach of that duty, (3) a causal connection between the duty breached and injury received; and (4) damages. *Calwell v. Hassan*, 260 Kan. 769, 778, 925 P.2d 422, 428 (1996). Whether a duty

16

exists is a question of law, but whether a duty has been breached is a question of fact. *Deal v. Bowman*, 286 Kan. 853, 858, 188 P.3d 941 (2008).

### 1. Liberty Mutual's Duty

Liberty Mutual's employee, Agent Smith, had a duty to Mr. Woolman and Clemens Coal. An "insurance agent or broker who undertakes to procure insurance for another owes to the client the duty to exercise the skill, care and diligence that would be exercised by a reasonably prudent and competent insurance agent or broker acting under the same circumstances." *Marshel Investments, Inc. v. Cohen*, 6 Kan. App. 2d 672, 683, 634 P.2d 133, 141 (1981). Liberty Mutual impliedly admits its employee, Agent Smith, as a licensed insurance agent, owed a duty to Mr. Woolman. (Plaintiff's Suggestions in Support of its Motion for Summary Judgment, Pg. 11, Document 56). Therefore, the only question remaining is whether Liberty Mutual's employee, Agent Smith, breached that duty and caused Mr. Woolman damage – a question which is not appropriate for summary judgment because reasonable minds could disagree.

### 2. Breach of Duty

Liberty Mutual's employee, Agent Smith, failed to meet even the minimal skills, care and diligence that a reasonable, prudent and competent insurance agent or broker would have exercised in obtaining coverage for Clemens Coal. [Exhibit C, Haake Supplemental Report]. Thus, a reasonable jury could find that Agent Smith breached her duty as insurance an agent.

Agent Smith's duties as an employee for Liberty Mutual were to call prospective insurance clients and offer Liberty Mutual's products. [Exhibit F, Smith Deposition, tr. 13:16-17]. It is unclear how the relationship between Agent Smith and Clemens Coal began, but it is undisputed that at some point, Agent Smith provided Clemens Coal with a quote for insurance coverage.

17

Despite providing an insurance quote for a coal company, Agent Smith did not know what a Black Lung Endorsement was, and did not perform any research to determine if such an endorsement is necessary for her potential client, Clemens Coal. [Exhibit F, Smith Deposition, tr. 31:13-23]. A reasonably prudent and competent insurance agent "has a responsibility to provide the specific needs related to that industry or related to that insured, or to advise if [they] cannot." [Exhibit B, Haake Deposition, tr. 17:1-5]. Federal law requires a coal company to maintain Black Lung coverage, making Black Lung coverage a specific need related to Agent Smith's prospective client. 20 C.F.R. § 726.203. Agent Smith's testimony demonstrates that she failed to provide specific needs related to a coal industry and failed to even try to understand what those needs may be.

Diana Trent, Liberty Mutual's underwriter on the Clemens Coal policy, testified that the premiums she developed for Clemens Coal were based on the submissions sent to her by Agent Smith. [Exhibit D, Trent Deposition, tr. 27:3-7]. Ms. Trent further testified that an insurance agent who is selling workman's compensation insurance should have reviewed the submissions for the coverage with the prospective client. [Exhibit D, Trent Deposition, tr. 29:19 – 30:1]. Based on the fact that the Black Lung endorsement was not included, and Clemens Coal knew it was required, it is very unlikely that Agent Smith reviewed the submission with Clemens Coal.

Based on the depositions of Ms. Trent and Agent Smith, a genuine issue of material fact exists as to whether Clemens Coal or its agents were informed of the fact that Black Lung coverage was not included in Liberty Mutual policy. Agent Smith did not believe it was her responsibility to advise prospective clients of what types of insurance they needed but instead was just the happy face that walked in and said, "Could I sell you some insurance." [Exhibit F, Smith Deposition, tr. 60:18 - 64:14]. Her standard practice was to simply copy the

18

prospective client's then-existing policy and ask underwriting to duplicate it. [Exhibit F, Smith Deposition, tr. 28:19 - 29:1; 62:21-24]. Agent Smith testified she would tell a prospective client if coverage was not provided only if requested, and only if her underwriter informed her it was not offered, but she "wouldn't volunteer the information." [Exhibit F, Smith Deposition, tr. 60:18 – 61:24]. Her testimony makes it very likely that she failed to inform Mr. Woolman or Clemens Coal of the lack of Black Lung coverage. Liberty Mutual, through Agent Smith, breached its duty to act as reasonably prudent, competent insurance agent.

Plaintiff would have this Court believe Mr. Woolman must show Clemens Coal requested Black Lung coverage and that Mr. Woolman has failed to do so. (Plaintiff's Suggestions in Support of its Motion for Summary Judgment, Pg. 11, Document No. 56). While Mr. Woolman strongly disagrees with Plaintiff's narrow recitation of an insurance agent's duty under Kansas law, even Plaintiff's expert disagrees that Mr. Woolman has failed to show Clemens Coal requested Black Lung coverage. Plaintiff's expert, Robert Bryan Tilden, Jr., agreed that the request and instructions for insurance coverage to Agent Smith in this case was the tendering of Clemens Coal's past policies and that it appeared that had been done. [Exhibit H, Tilden Deposition, tr. 42:2-7]. Further, Plaintiffs Expert Tilden testified that if the past policy tendered by Clemens Coal to Agent Smith contained the Black Lung Endorsement then the policy sold to Clemens Coal should have contained the Black Lung Endorsement. [Exhibit H, Tilden Deposition, tr.63:11-20].

It is clear from the Affidavit of Mr. Ronald V. Srajer that Clemens Coal's previous policies contained the Black Lung Endorsement. [Exhibit E, Ronald V. Srajer Affidavit]. As discussed above, it was Agent Smith's habit and custom to copy the policies and duplicate them. [Exhibit F, Smith Deposition, tr. 28:19 - 29:1 and 62:21-24]. This would necessarily require that

19

Clemens Coal, or its agents, tender such policies to Agent Smith. By tendering such policies, according to Plaintiff's Expert, Clemens Coal requested that the coverage be the same as its previous policies. [Exhibit H, Tilden Deposition, tr. 63:11-20]. Clemens Coal requested Black Lung coverage. A reasonable jury could conclude, based on all the facts, that Clemens Coal requested Black Lung coverage by tendering its policies and Agent Smith breached her duty by failing to procure such coverage, or advise that such coverage was not available.

### 3. Casual Connection and Damages

If Agent Smith properly informed herself of the needs of the industry she was soliciting and informed Clemens Coal or its agents that Black Lung coverage was not included in its quote, Clemens Coal would not have chosen Liberty Mutual or could have otherwise obtained coverage for Black Lung claims, as was its intent. Instead, Clemens Coal insured its risk through Liberty Mutual thereby exposing Mr. Woolman, the company's president, to personal liability for Black Lung claims.

As stated above, Mr. Worley knew Clemens Coal was required to maintain coverage for Black Lung claims and Clemens Coal's philosophy was to maintain "the necessary required coverages." (Exhibit G, Worley Deposition, tr. 29:1 and thereafter). The reasonable inference, based on these facts, is that had Clemens Coal or its agents known Black Lung coverage was not included in Liberty Mutual's quote, Clemens Coal would have chosen a different insurance provider in an effort to obtain such coverage. A reasonable jury could conclude Agent Smith, Liberty Mutual's employee, breached her duty as a licensed insurance agent by failing to inform Clemens Coal of the lack of Black Lung coverage. Thus, summary judgment is not proper.

    C.    **Summary judgment must be denied because Liberty Mutual's failure to produce the Workers Compensation Submission Form which was provided to its underwriter could lead a reasonable jury to conclude the information it contained was adverse to Liberty Mutual.**

Liberty Mutual has failed to produce evidence which would shed light on a material fact, namely, whether the original submission of workers compensation insurance to Liberty Mutual's underwriter included the Black Lung Endorsement or any notes about the availability of such coverage. "[W]hen a party to a case has failed to offer evidence . . . within his power to produce, an inference arises that the evidence . . . would have been adverse to that party." *Londerhold v. Unified Sch. Dist.No. 500*, 199 Kan. 312, 324, 430 P.2d 188 (1967). Because inferences are to be construed against the party moving for summary judgment, summary judgment is not proper. *See Farha v. City of Wichita*, 284 Kan. 507, 510, 161 P.3d 717 (2007).

In *Shirley v. Glass*, a pawn shop had a surveillance video of the owners selling a firearm to a woman with her son present. 44 Kan.App.2d 688, 241 P.3d 134 (2010) (partially overruled on other grounds)). The son, who was a felon, used it to kill his son and then himself. Shirley, the mother of the murdered child, sued the owners of the pawn shop for selling a weapon to a felon in a "straw-person" sale. *Id*. The owners of the pawn shop asserted they could not produce the tape because the machine had "eaten" it. *Id*. The district court entered summary judgment for the owners of the pawn shop. On appeal the court reversed summary judgment in part because, ". . . the fact that appellees could not produce the videotape from the surveillance cameras that would have recorded the entire transaction . . . could lead to an adverse inference that the appellees had illegally filled out part of the form . . ." *Id*. at 703.

Here, Liberty Mutual has failed to produce the Submission Form for the workers compensation that Ms. Trent used to develop the policy eventually provided to Clemens Coal, despite the fact that many of the other Submission Forms for other types of coverage were produced. [Exhibit J, Trent Deposition, Exhibit 2]. By Liberty Mutual employee's own admission, it should have the workers compensation Submission Form in its Underwriting File

for Clemens Coal. [Exhibit D, Trent Deposition tr. 27:8 – 28:1]. Ms. Trent testified she developed premiums for coverages based on the Submission Forms she received. [Exhibit D, Trent Deposition, tr. 27:4-7]. Thus, the Submission Form could provide information evidencing whether Agent Smith originally requested the Black Lung Endorsement pursuant to the then-existing policies. It could also evidence whether or not Agent Smith or Ms. Trent considered the Black Lung Endorsement or made comments on it. [Exhibit B, Haake Deposition, tr. 50:4-14]. A jury could reasonably infer that Liberty Mutual's failure to provide the document, when it has provided the other Submission Forms for Clemens Coal, is indicative that the information contained on the form would show it knew of Clemens Coal's desire to have Black Lung coverage and failed to provide it and inform Clemens Coal or Mr. Woolman of its unavailability.

Because Liberty Mutual cannot or will not produce the workers compensation Submission Form, all inferences must be construed in favor of Mr. Woolman.

## V.    CONCLUSION

Liberty Mutual's request for summary judgment must be denied because genuine issues of material fact exist. A reasonable jury could conclude Liberty Mutual, through Agent Smith, misrepresented, made an implied promise, or failed to speak when she had a duty to speak, and that Mr. Woolman relied on such misrepresentations, promises, and silence.

Liberty Mutual's employee, Agent Smith, had an independent duty as a licensed insurance agent and she breached that duty when she failed to provide the requested coverage, apprise herself of her prospective client's industry needs, and advise them on the lack of Black Lung Coverage.

Liberty Mutual has failed to produce evidence that it should be able to produce, and which directly relates to the facts of whether or not a misrepresentation was made and whether

22

Liberty Mutual, through Agent Smith, breached its duty. A reasonable jury could infer, that because Liberty Mutual did not produce such evidence, that it would be adverse to it.

WHEREFORE, Defendant Dennis Woolman respectfully requests this Court deny Liberty Mutual's request for summary judgment.

*Respectfully submitted,*

ENSZ & JESTER, P.C.

_____

| | |
|---|---|
| JAMES H. ENSZ | KS #13040 |
| ROBERT O. JESTER | KS FED #70451 |
| WESLEY J. CARRILLO | KS #23984 |

1100 Main Street, Suite 2121
Kansas City, Missouri 64105
Telephone: 816-474-8010
Facsimile: 816-471-7910
jensz@enszjester.com
rjester@enszjester.com
wcarrillo@enszjester.com
**Attorneys for Defendant Woolman**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served *via* United States Postal Service, first class, postage prepaid, this 23rd day of October, 2015 to:

Bruce A. Moothart
Ryan J. Watson
Peter K. Andreone
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main St., Suite 310
Kansas City, MO 64112
bruce@sbhlaw.com
ryan@sbhlaw.com
peter@sbhlaw.com
**Attorneys for Plaintiff**

_____
Attorney for Defendant Woolman

23