**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LIBERTY MUTUAL FIRE** | ) |
| **INSURANCE COMPANY** | ) |
| | ) |
| *Plaintiff*, | )    Case No. 2:14-cv-2332-CM |
| v. | ) |
| | ) |
| **THE CLEMENS COAL COMPANY**, et al. | ) |
| | ) |
| *Defendants*. | ) |

<u>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to FED. R. CIV. P. 56, Plaintiff Liberty Mutual Fire Insurance Company ("Liberty

Mutual" or "Liberty") submits the following reply in support of its Motion for Summary Judgment,

filed as ECF No. 55.

1

## I.    INTRODUCTION

As stated in its initial suggestions, this is a straightforward coverage dispute that is ripe for summary judgment.   The unambiguous language of the workers' compensation policy (the "Policy") at issue does not provide coverage for federal black lung claims.   This premise is uncontested by Woolman.   He cites no Kansas law to the contrary and makes no effort in his response to refute this proposition.   Instead, Woolman hopes to avoid the plain language of the Policy by manufacturing coverage through theories of estoppel, breach of duty, and an adverse inference.   But Woolman offers no reliable evidence supporting his theories, only conjecture and speculation based upon self-serving guesswork. This is insufficient in the Tenth Circuit, because to defeat summary judgment the "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.* 366 F.3d 869 (10th Cir. 2004) (affirming summary judgment in favor of employer in ADA claim where testimony in opposition amounted to speculation).   There is simply no evidence that Clemens Coal requested an endorsement to extend black lung coverage under the Policy, nor is there any evidence that Liberty Mutual had an obligation to provide black lung coverage or recommend that it be obtained. Because Woolman's defenses and claims are nothing more than conjecture and surmise, Liberty Mutual is entitled to summary judgment on both its own claim for Declaratory Judgment and Woolman's counterclaim in its entirety.

## II.    REPLY TO WOOLMAN'S RESPONSE TO LIBERTY MUTUAL'S CONCISE STATEMENT OF UNCONTROVERTED MATERIAL FACTS

In its Suggestions in Support of its Motion for Summary Judgment, Liberty Mutual set forth its Statement of Facts ("LM SOF") in 21 separately numbered paragraphs.  Woolman directly admitted 18 of the material facts, denying only 6, 20, and 21.  Woolman's remaining failures to

controvert the stated facts identified by Liberty Mutual are addressed in the numbered paragraphs that follow.

6.      This purported dispute is immaterial to Liberty Mutual's summary judgment motion.  Irrespective of Woolman's general testimony with respect to his desire for "full coverage", he further testified that he did not know what "full coverage" meant, and has no recollection of communicating that to anyone in 1997.  [LM SOF 17, citing Ex. 2, Woolman Dep. 45:25–46:21.]  Moreover, Woolman cannot speak for what was told to anybody at Liberty Mutual because he did not deal with them directly and delegated this responsibility to Jim Worley. [Woolman's Resp. in Opp'n, Ex. A, Woolman Dep. 48:1–8; LM SOF 15, citing Ex. 3, Worley Dep. 48:3–15.]

20.     This purported dispute is immaterial to Liberty Mutual's summary judgment motion.  Haake testified that he does not know what coverage Clemens Coal requested from Liberty Mutual.  [Woolman's Resp. in Opp'n, Ex. B, Haake Dep. 28:7–10.]  Although Woolman cites to Haake's supplemental report, the report is void of any mention of the coverage requested by Clemens Coal.  This is consistent with the evidence presented by the parties; no witness has any recollection of the coverage requested by Clemens Coal more than 15 years ago.

21.     This purported dispute is immaterial to Liberty Mutual's summary judgment motion.  The cited guidelines identified by Liberty Mutual state that black lung coverage should not be offered.

## III.    RESPONSE TO DEFENDANT WOOLMAN'S ADDITIONAL CONCISE STATEMENT OF MATERIAL FACT AS TO WHICH NO GENUINE ISSUE EXISTS

1.      Liberty Mutual admits that Woolman has accurately paraphrased the Affidavit, but the alleged fact is immaterial.

2.      Liberty Mutual admits that Woolman has accurately paraphrased the Affidavit, but the alleged fact is immaterial.

3.      Admitted, but immaterial.

4.      Admitted, but immaterial.

5.      Admitted, but immaterial.

6.      Admitted, but immaterial.

7.      Admitted, but immaterial.

8.      Denied, but this purported fact is incomplete and immaterial to Liberty Mutual's summary judgment motion.  In the portion of deposition cited by Woolman, Ms. Smith testified that if the proposed insured had, in the first place, asked for black lung coverage, but Liberty Mutual could not offer it, she would have informed the proposed insured.  [Woolman's Resp. in Opp'n, Ex. F, Smith Dep. 61:10–24.]

9.      Admitted, but immaterial.

10.      Denied, but this purported fact is incomplete and immaterial to Liberty Mutual's summary judgment motion.  In the testimony cited by Woolman, Ms. Trent was asked if the agent "could have or should have" sat down with the potential insured to review the coverage submission form for coverage.  Although Ms. Trent answered in the affirmative, this is a compound question (properly objected to) and counsel did not inquire as to which of the two she was affirming.  [Woolman's Resp. in Opp'n, Ex. D, Trent Dep. 30:19–31:1.]

11.      Admitted, but immaterial.

12.      Admitted, but immaterial.

13.      Denied, but this purported fact is incomplete and immaterial to Liberty Mutual's summary judgment motion.  In the testimony cited by Woolman, Ms. Trent stated that she would

4

"expect" a workers' compensation submission form, not that Liberty Mutual "should have had a Work Comp submission form." [Woolman's Resp. in Opp'n, Ex. D, Trent Dep. 27:8–18.]

14.     Denied, but this purported fact is immaterial to Liberty Mutual's summary judgment motion.   The purported testimony offered by Woolman is speculative and inadmissible to oppose a summary judgment motion. *See Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (2004) (stating that "unsubstantiated allegations carry no probative weight in summary judgment proceedings" and "testimony must be based on more than mere speculation, conjecture or surmise.").

15.     Admitted, but immaterial.

16.     Admitted.

17.     Admitted, but immaterial.

18.     Liberty Mutual admits that Mr. Worley testified consistent with this purported statement of fact.  However, this statement is inadmissible in a summary judgment motion, as it is speculative and lacks foundation. It is also immaterial.

19.     Liberty Mutual admits that Mr. Worley testified consistent with this purported statement of fact.  However, this statement is inadmissible in a summary judgment motion, as it is speculative and lacks foundation. It is also immaterial.

20.     Liberty Mutual admits that Woolman has paraphrased Mr. Haake.  However, this statement is inadmissible in a summary judgment motion, as it is speculative and lacks foundation. It is also immaterial.

21.     Liberty Mutual admits that Woolman has paraphrased Mr. Haake.  However, this statement is inadmissible in a summary judgment motion, as it is speculative and lacks foundation. It is also immaterial.

22.     Admitted, but immaterial and incomplete.  The purported statement is also taken out of context and is a response to an incomplete and speculative hypothetical.  Mr. Tilden further testified that no one knows what Clemens Coal provided to Debbie Smith and that Clemens Coal had gone without black lung coverage in the past.  [Ex. 9, Tilden Dep. 107:22–109:6.]  In addition, Mr. Tilden cited Debbie Smith's testimony that if Clemens Coal requested black lung coverage, but Liberty Mutual rejected that request, Liberty Mutual would have informed Clemens Coal of that rejection.  [Ex. 9, Tilden Dep. 109:7–110:11.]

23.     Admitted, but immaterial and incomplete.  The purported statement is also taken out of context and is a response to an incomplete and speculative hypothetical.  Mr. Tilden further testified that no one knows what Clemens Coal provided to Debbie Smith and that Clemens Coal had gone without black lung coverage in the past.  [Ex. 9, Tilden Dep. 107:22–109:6.]  In addition, Mr. Tilden cited Debbie Smith's testimony that if Clemens Coal requested black lung coverage, but Liberty Mutual rejected that request, Liberty Mutual would have informed Clemens Coal of that rejection.  [Ex. 9, Tilden Dep. 109:7–110:11.]

24.     Denied, but immaterial and incomplete.  The purported statement is also taken out of context and is a response to an incomplete and speculative hypothetical. Mr. Tilden further testified that an insurance agent has an obligation to review with a potential insured coverages available to that insured for the particular industry, but only if asked specifically to do so.  He could not discern from the evidence in this case whether that request was made. [Ex. 9, Tilden Dep. 58:14–59:8.]  Mr. Tilden further testified that it is the insured's decision as to whether to procure a policy with or without black lung coverage.  [Ex. 9, Tilden Dep. 62:25–63:10.]

25.     Denied, but immaterial and incomplete. The purported statement is also taken out of context and is a response to an incomplete hypothetical. Mr. Tilden further testified that no one

knows what Clemens Coal provided to Debbie Smith and that Clemens Coal had gone without black lung coverage in the past. [Ex. 9, Tilden Dep. 107:22–109:6.]  In addition, Mr. Tilden cited Debbie Smith's testimony that if Clemens Coal requested black lung coverage, but Liberty Mutual rejected that request, Liberty Mutual would have informed Clemens Coal of that rejection.  [Ex. 9, Tilden Dep. 109:7–110:11.]   Mr. Tilden further testified that it is the insured's decision as to whether to procure a policy with or without black lung coverage.  [Ex. 9, Tilden Dep. 62:25–63:10.]

26.     Denied, but immaterial and incomplete. The purported statement is also taken out of context and is a response to an incomplete hypothetical. Mr. Tilden further testified that no one knows what Clemens Coal provided to Debbie Smith and that Clemens Coal had gone without black lung coverage in the past.  [Ex. 9, Tilden Dep. 107:22–109:6.]  In addition, Mr. Tilden cited Debbie Smith's testimony that if Clemens Coal requested black lung coverage, but Liberty Mutual rejected that request, Liberty Mutual would have informed Clemens Coal of that rejection.  [Ex. 9, Tilden Dep. 109:7–110:11.]   Mr. Tilden further testified that it is the insured's decision as to whether to procure a policy with or without black lung coverage.  [Ex. 9, Tilden Dep. 62:25–63:10.]   Finally, Mr. Tilden testified that there is no evidence as to the discussions between Clemens Coal and Liberty Mutual with respect to the coverage that was requested.  [Ex. 9, Tilden Dep. 89:11–21.]

27.     Admitted, but immaterial.  In addition, this is not a purported fact, merely a statement of law, which is inappropriate for inclusion in this section.

28.     Admitted, but immaterial.  In addition, this is not a purported fact, merely a statement of law, which is inappropriate for inclusion in this section.

29.     Admitted, but immaterial.  In addition, it is not a purported fact, merely a statement of law, which is inappropriate for inclusion in this section.

30.     Liberty Mutual assumes that Woolman intended to write "each" between "that" and "policy" so that the fact reads, "20 C.F.R. § 726.204 provides that each policy obtained . . . ." If so, this is admitted, but immaterial.  In addition, it is not a purported fact, merely a statement of law, which is inappropriate for inclusion in this section.

31.     Denied but immaterial.  Liberty Mutual assumes that Woolman intended to cite to § 726.300 instead of § 726.204. In addition, it is not a purported fact, merely a statement of law, which is inappropriate for inclusion in this section.

## IV.     ARGUMENTS AND AUTHORITIES

It is undisputed that, as a matter of law, the Policy does not provide black lung coverage. The only remaining decision for the Court is whether the case should survive summary judgment based on three tenuous arguments raised by Woolman in his response: (1) that Liberty Mutual should be estopped from denying coverage based upon alleged misrepresentations and promises of coverage; (2) that Debbie Smith, Liberty's agent, breached an alleged duty of care by not securing black lung coverage for Clemens Coal; and (3) the misguided notion that the lack of existence of a submission form almost 20 years after the fact creates an adverse inference that could lead a jury to find coverage.  All are futile.

The fatal flaw permeating throughout Woolman's arguments is that he has the burden of providing admissible evidence supporting each of his defenses and claims.  Instead, Woolman offers rank speculation, conjecture and unsubstantiated supposition, all of which are insufficient to defeat summary judgment.  There is simply no evidence identifying the documents, if any, submitted to Liberty Mutual during the procurement process.  Nor is there a scintilla of evidence supporting the proposition that Clemens Coal actually requested black lung coverage.  Finally, the

simple fact that Liberty Mutual no longer possesses a nearly 20-year-old submission form, despite there being no indication that the form ever contained any information about black lung coverage, cannot serve as the basis for an inference adverse to Liberty Mutual.

### A.     Estoppel is not a basis to prevent Liberty Mutual from denying coverage.

Woolman first seeks to avoid summary judgment through theories of estoppel, both equitable and promissory. Under Kansas law, "each element of estoppel must be proven or the claim will fail. Estoppel will not be held to exist where facts are ambiguous or subject to more than one construction." *Rockers v. Kansas Turnpike Authority*, 991 P.2d 889, 894 (Kan. 1999) (holding that estoppel did not apply to avoid a statute of limitations defense). The facts here, centered on a transaction that occurred almost 20 years ago, are mired in ambiguities and subject to numerous constructions.

In the hopes of creating a fact issue with respect to the requisite elements of estoppel, Woolman makes the conclusory allegation that Debbie Smith acted in such a way that could enable a reasonable jury to conclude that she misrepresented coverage available under the Policy. Woolman's Resp. in Opp'n 12, 14. In support of this position, Woolman claims that Debbie Smith would typically review an existing policy, and if she had done so in this case, she either knew or should have known that Clemens Coal wanted black lung coverage. Woolman also posits that Debbie Smith remained silent when she had a duty to inquire further and discuss coverage with Clemens Coal. Woolman's Resp. in Opp'n 13. Woolman's shortcoming is that his contention is rooted in pure conjecture with respect to the materials provided to Debbie Smith and the coverage requested. Jim Worley, the sole individual at Clemens Coal responsible for procuring the Policy, has no memory of what was submitted to Liberty Mutual and remembers nothing about obtaining the policy. LM SOF 19. Likewise, Debbie Smith has no recollection of any contact with Clemens Coal regarding the procurement of the Policy. LM SOF 19. With no actual evidence of the

9

materials submitted, coverage requested, documents reviewed, or representations made, the only truly reliable evidence of the transaction is the Policy, which does not provide black lung coverage. There is no reasonable inference the Court can draw from the evidence that would defeat summary judgment. *See Zinna v. Cook*, 428 Fed.App'x 838, 848 (10th Cir. 2011) (holding that speculation by plaintiff as to the involvement of various individuals who were connected to each other as well as a website was insufficient to survive summary judgment on conspiracy claim).

Woolman's reliance argument with respect to both equitable and promissory estoppel is equally unavailing. Again, there is no evidence of the exchange that took place between Jim Worley and Debbie Smith during the procurement of the policy. Woolman implies that Clemens Coal and its agents relied on Debbie Smith because an insurance agent should know the requirements of any industry from which it solicits business. Woolman's Resp. in Opp'n 13. But Worley specifically testified that prior to obtaining the policy, he was aware that coal mine operators were required to carry coverage for black lung disease. LM SOF 16. Moreover, Clemens Coal was in financial hardship at the time of the issuance of the policy and facing the prospect of bankruptcy. LM SOF 4. Any negotiations or discussions with respect to the Policy, and the rationale for procuring a policy without black lung coverage (such as cost-saving), is simply guesswork, resulting in many equally plausible scenarios. These are precisely the types of ambiguities and alternative construction issues that defeat an estoppel claim under Kansas law. *Rockers*, 991 P.2d at 894.

The single case discussed by Woolman, *Bouton v. Byers*, 321 P.2d 466 (Kan. Ct. App. 1989), is inapposite. Although the *Bouton* court held that the question of reliance is generally a question of fact for the jury, the court was presented with conflicting testimony regarding a representation made that allegedly inspired the plaintiff to leave her employment. Here, there is

10

no evidence of conflicting representations. *Id.* at 785. Jim Worley and Debbie Smith have no knowledge of the documents that were submitted to Liberty Mutual and have no recollection of any discussions held or representations made with respect to coverage. Consequently, there is no factual issue for the jury to consider and summary judgment is proper.

### B.    Woolman has failed to offer evidence that Debbie Smith breached any duty owed to Clemens Coal.

Woolman's second effort to survive summary judgment is the claim that Debbie Smith breached a duty of care allegedly owed to Clemens Coal with respect to the procurement of insurance coverage and that a question of fact exists with respect to whether the duty has been breached. Woolman's Resp. in Opp'n 16. Woolman implies that Smith had a duty, as an insurance agent, to assess the industry needs of Clemens Coal and, whether requested or not, provide coverage related to those specific needs. Woolman's Resp. in Opp'n 18. This is not the standard under Kansas law, which explains why Woolman failed to offer any Kansas authority supporting the proposition. The standard provides that an insurance agent must "exercise the skill, care, and diligence that would be exercised by a reasonably prudent and competent insurance agent or broker acting under the same circumstances." *Bichelmeyer Meats v. Atl. Ins. Co.*, 42 P.3d 1191, 1196 (Kan. Ct. App. 2001). However, in the absence of a specific contract to do so or an agency relationship between the insured and the agent, the only duty imposed upon the insurance agent is to provide the specific insurance requested. *Id.* at 1197. *See also Hartman v. Great Central Ins. Co.*, 915 F.Supp. 250 (D. Kan. 1996) (holding no duty of agent to determine insurance needs, value the insured's property for insurance purposes, or advise the insured on insurance coverage). As repeated throughout this brief, Woolman has failed to provide any evidence that Clemens Coal requested any specific coverage, let alone black lung coverage, when procuring the Policy. LM SOF 18, 19.

11

Woolman also contends that a material issue of fact exists with respect to whether Clemens Coal was informed that black lung coverage was not included in the Liberty Mutual policy. This puts this proverbial cart before the horse, because it necessarily requires the assumption that Clemens Coal requested black lung coverage. Again, there is no evidence that this is the case. Even if it had, Ms. Smith testified that if the proposed insured had asked for black lung coverage, but Liberty Mutual could not offer it, she would have informed the proposed insured. Ex. 6, Smith Dep. 61:10–24. There are various plausible reasons, particularly financial, that would have motivated Clemens Coal to move forward with procuring the Policy without black lung coverage. Finally, Woolman attempts to create a question of fact with respect to whether Clemens Coal requested black lung coverage by contorting the deposition testimony of Brian Tilden, Liberty Mutual's expert, through incomplete and improper hypotheticals. But consistent with the evidence in this case, Tilden testified that no one knows what Clemens Coal provided to Debbie Smith.[1] Ex. 9, Tilden Dep. 107:22–109:6.

Addressing the issue of causation, Woolman further claims that if Clemens Coal or its agents knew that black lung coverage was not included in the Liberty Mutual quote, Clemens Coal would have chosen a different insurance provider. As with the remainder of Woolman's opposition, this is speculation and conjecture. Although Woolman's opposition references a general "philosophy," Woolman fails to provide any direct evidence that Clemens Coal would have chosen a different carrier. An equally likely assumption is that Clemens Coal chose the specific Liberty Mutual policy, without black lung coverage, to cut costs during a financially challenging time period. Woolman's assertion is pure conjecture and cannot defeat summary judgment.

---

[1] Tilden also noted that Clemens Coal had chosen to go without black lung coverage in the past. Ex. 9, Tilden Dep. 107:22–109:6.

Woolman's effort to establish tort liability on behalf of Debbie Smith (and therefore Liberty Mutual) is, in essence, a *res ipsa loquitur* argument—an insurance policy was issued to a coal mine without black lung coverage and therefore the agent must have been negligent.  The doctrine is a limited evidentiary rule that becomes applicable where there is no direct proof of negligence, but where circumstances are established so as to leave no conclusion other than the defendant is at fault.  *See Ballard v. Buckley Powder Co.*, 60 F. Supp. 2d 1180 (D. Kan. 1999) (holding that *res ipsa loquitur* did not apply to claim of homeowner who sued blasting company for structural damage to her home).

> Essential to the application of the doctrine of res ipsa loquitur is that (1) It must be shown that the thing or instrumentality causing the injury or damage was within the exclusive control of the defendant; (2) the occurrence must be of such kind or nature as ordinarily does not occur in the absence of someone's negligence; and (3) the occurrence must not have been due to contributory negligence of the plaintiff.

*Ballard v. Buckley Powder Co.*, 60 F. Supp. 2d 1180, 1887–88 (D. Kan. 1999).

The *res ipsa* elements are not applicable here.  The issuance of the Policy here was not in Liberty Mutual's complete control.   Clemens Coal had an opportunity to submit information related to the issuance of the Policy and could have easily reviewed the policy after its inception. Moreover, the purported damage, the lack of black lung coverage, was the result of Clemens Coal's failure to request such coverage and its decision to purchase the Policy without the coverage. There is no basis to apply the rules of *res ipsa loquitur* to the instant facts and summary judgment is warranted.

**C.** **Woolman has failed to establish a basis for the Court to impose an adverse inference against Liberty Mutual.**

Woolman's final salvo is that an adverse inference should be imposed against Liberty Mutual because it did not produce the original submission form for the Policy issued almost twenty years ago.  Woolman's Resp. in Opp'n 21.  Woolman's argument is the *de facto* application of a

13

spoliation claim, an evidentiary remedy not called for here. First, Woolman has never moved the Court for any sanctions during these proceedings. Second, in order to obtain an adverse inference through a spoliation claim, Woolman must prove that Liberty Mutual had a duty to maintain the evidence because it knew or should have known that litigation was imminent, and that Liberty Mutual acted in bad faith. *See Turner v. Public Service Co. of Colorado*, 563 F.3d 1136 (10th Cir. 2009). Nowhere in Woolman's brief does he provide any evidence that Liberty Mutual was required to maintain a submission form for two decades based upon the potential for unknown litigation, let alone any implication of bad faith. Consequently, there is no procedural basis for the Court to apply the requested adverse inference.

The three cases Woolman cites in support of his argument are Kansas appellate cases applying Kansas law, which are not binding on this Court. Moreover, the single case primarily relied upon by Woolman, *Shirley v. Glass*, 241 P.3d 134, 146 (Kan. Ct. App. 2010), is readily distinguishable. In *Shirley*, a man killed himself and his son after purchasing a firearm from a pawn shop. *Id.* at 139–40. The suit alleged that the man was a felon and the sale of the firearm was illegal because of that. *Id.* at 140. The pawn shop had a security camera, which could have shed light on some aspects of the sale that were crucial to the case. *Id.* at 142. When the sheriff's deputy contacted the shop owners about the murder, they "stated that the recording system had malfunctioned and that the video recording system had 'eaten' the tape." *Id.* Although it is unclear how soon after the murder the sheriff's deputy contacted the shop owners, one can assume this took place within a short time from the date of the incident.

Not having a security tape that was "eaten" in close proximity to the underlying event is far from analogous to not having a submission form that was filled out almost 20 years ago for a policy that was canceled almost just as long ago. Moreover, whether the submission form would

14

have contained any information relevant to black lung coverage is again pure conjecture and supposition. Woolman's adverse inference argument is simply a red herring that has no impact on Liberty Mutual's summary judgment motion.

## V.    CONCLUSION

The uncontroverted evidence establishes that the Policy does not provide coverage for black lung claims. Woolman's efforts to avoid the plain language of the Policy through theories of estoppel, breach of duty, and an adverse inference are futile because they are based entirely on speculation and conjecture. There is no reliable evidence that Clemens Coal requested an endorsement to extend black lung coverage under the Policy nor is there any evidence that Liberty Mutual had an obligation to provide black lung coverage. Consequently, Liberty Mutual is entitled to summary judgment on both its own claim for Declaratory Judgment and Woolman's counterclaim in its entirety.

Respectfully submitted,

**SEYFERTH, BLUMENTHAL & HARRIS, LLC**

/s/ Bruce A. Moothart
Bruce A. Moothart, MO Bar #45517
4801 Main Street, Suite 310
Kansas City, MO  64112
T: (816) 756-0700
F: (816) 756-3700
bruce@sbhlaw.com
*Attorney for Plaintiff Liberty Mutual Fire*
*Insurance Company*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on or before this 6th day of November, 2015, a true and accurate copy of the foregoing was filed electronically with the Court, with notice of the filing generated and sent electronically by the Court's electronic filing system to:

Robert O. Jester
James H. Ensz
Wesley J. Carrillo
1100 Main Street, Suite 2121
Kansas City, MO 64105
*Attorney for Defendant Dennis Woolman*

/s/ Bruce A. Moothart
*Attorney for Plaintiff Liberty Mutual*

16