**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 2:14-cv-02332-CM-JPO |
| vs. | ) ) | |
| THE CLEMENS COAL COMPANY, DENNIS WOOLMAN, and CLAYTON SPENCER | ) ) ) ) ) | |
| Defendants. | ) | |

**LEGAL MEMORANDUM IN SUPPORT OF WOOLMAN'S MOTION TO EXCLUDE FROM EVIDENCE THE TESTIMONY AND REPORT OF R. BRYAN TILDEN**

The expert report and testimony of R. Bryan Tilden should be excluded from evidence because his report fails to meet the requirements of Rule 26 and his report and testimony are not reliable. Tilden's testimony is not reliable due to his utter failure to support his opinions with anything other than his own conclusory statements based on speculation and inferences. Further, Tilden has failed to apprise himself of the duties a Kansas-licensed insurance agent owes to his clients. Accordingly, Tilden's opinions do not meet the requirements of the Federal Rules of Evidence and they cannot withstand the scrutiny the Supreme Court requires in *Daubert* and *Kumho*. Therefore, Tilden's opinions must be excluded from evidence.

## I.    INTRODUCTION

Woolman's counterclaim against Liberty Mutual alleges that Liberty Mutual, through its agents and employees, breached the duty of care owed to Woolman and the Clemens Coal Company. Liberty Mutual has submitted an expert report in which Tilden opines that "Liberty

1

had no responsibility to recognize or advise the absence of Black Lung Disease Coverage" to the Clemens Coal Company. While Tilden makes general reference to the "record," he fails to support his opinions with specific facts and a reliable methodology. Instead, he simply makes subjective conclusory opinions based on assumptions and inferences in Liberty Mutual's favor. Tilden is precisely the type of "hired gun" opinion that should be excluded by the Court.

As will be discussed below, Tilden's report fails to meet the requirements of Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Tilden did not rely on sufficient facts and data and failed to use reliable methodology in arriving at his opinions. Thus, Tilden's report and testimony should be excluded.

## II.    TILDEN'S REPORT IS DEFICIENT AND HIS REPORT AND TESTIMONY MUST BE EXCLUDED.

Rule 26(a)(2) requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). If a party fails to adhere to Rule 26(a) "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This Court has broad discretion to decide if a Rule 26(a) violation is justified or harmless and should consider whether Woolman will be prejudiced, the ability to cure any prejudice, whether allowing the evidence would disrupt the trial, and Liberty Mutual's bad faith or willfulness. *Woodworker's Supply Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 2005).

Tilden's expert report is six pages long (only two of which contain "opinions"), double spaced, and, as it relates to the opinions to be expressed at trial, contain only unsupported opinion and recitations of legal conclusions. [Exhibit A, Tilden's Report]. Even more alarming is the admission by Tilden during his deposition that he based his opinions, not on his own

2

knowledge, but on the report of Woolman's expert, Gerald C. Haake despite **not** identifying Mr. Haake's report as a document he reviewed.

During Tilden's deposition, he agreed he made no specific reference to any facts or data supporting any statement contained in the "Opinions" section of his report [Exhibit. B, Tilden Depo tr.  38:19-24]. Further, when asked what he relied on in formulating his opinion that "[i]n custom and practice, Liberty had a responsibility to use the skill and care which a reasonable and prudent person engaged in the insurance business would use under similar circumstances," he stated, "In Mr. Haake's report, he cited two specific cases that in essence made that statement." [Exhibit B, Tilden Depo. tr. 39:3-13].

Tilden's admission evidences the blatant deficiency in his report: that he failed to identify the "basis and reasons for" his opinions as well as all the "facts or data considered by the witness in forming them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).   Not only does Tilden's report not state that he reviewed Mr. Haake's report, but it also fails to state that he reviewed the cases which Mr. Haake relied on, in part, in forming his opinions.  Despite this, Tilden testified he had no intention of supplementing his report. [Exhibit B, Tilden Depo. tr. 35:5-13].

The failure to comply with Rule 26 was neither justified nor harmless and Woolman was prejudiced. Because of the inadequacies of Tilden's report, Woolman was not provided with enough information regarding the basis for his opinions in advance of his deposition.  Further, no effort has been made to cure the inadequacies despite the fact that Tilden's deposition was more than six months ago and counsel for Liberty Mutual was put on notice that Woolman was moving to strike Tilden's report for failure to comply with Rule 26. [Exhibit B, Tilden Depo. tr. 36: 14-25].  Woolman's intention to strike Tilden's report was also codified in the Pre Trial Order.  Without question, Liberty Mutual could have provided a supplement to Tilden's report to

cure the inadequacies but willfully failed to do so.  Finally, permitting Tilden to testify will disrupt the trial. If Tilden testifies to opinions or information supporting those opinions which were not contained in his report, Woolman will be forced to object and the Court will have to conduct inquiry, outside the presence of the jury, as to whether such testimony was included in his report.

Tilden's report is nothing more than a statement of unsupported opinions and legal conclusions.  It fails to adequately identify the facts and data considered, and fails to provide the basis and reasons for his opinions.  Thus, Tilden's report fails to comply with Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) and his report and testimony must be excluded pursuant to Fed. R. Civ. P. 37(c).

### III.    THE FEDERAL RULES OF EVIDENCE REQUIRE THE COURT TO SERVE AS A GATEKEEPER OF EXPERT EVIDENCE

Whether Tilden's testimony is admissible is governed by the Federal Rules of Evidence. Federal Rule of Evidence 702 governs expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

As the Supreme Court summarized it, "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). That is, the trial court acts as a gatekeeper to exclude irrelevant or unreliable evidence.

The Court's gatekeeping role "applies to all expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

> The objective of that [gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Id.* at 152. Thus, this Court must exercise its "gatekeeping" role as it relates to Liberty Mutual's expert.

## IV.     TILDEN'S OPINIONS ARE INADMISSIBLE

At the heart of this litigation is whether Liberty Mutual, through its agents and employees, exercised the skill, care, and diligence that a reasonably prudent and competent insurance agent would exercise under the same circumstances. Tilden's opinions are nothing more than unsupported opinions which fail to rely on sufficient facts and data, and they were not arrived at through the use of reliable principles and methods.

Tilden's opinions do not satisfy any of the requirements of Federal Rule of Evidence 702. Tilden does not base his testimony on sufficient facts or data, does not have specialized knowledge that will help the jury understand the evidence or determine a fact in issue, and does not use and apply reliable principles and methods. Therefore, his testimony is inadmissible.

### A.     Tilden Does Not Base His Opinion on Sufficient Facts or Data

During Tilden's deposition, he agreed he made no specific reference to any facts or data supporting any statement contained in the "Opinions" section of his report [Exhibit B, Tilden Depo. tr. 38:19-24]. All of Tilden's opinions are based on his unsupported assumptions of fact

that Clemens Coal Company did not request the black lung endorsement on the policy. However, Tilden himself admits that his review of the record did not answer that factual question. [Exhibit B, Tilden Depo. tr. [51: 16-23];

In regard to many of Tilden's "opinions," he testified during his deposition that there were no facts to support his opinions. Specifically, when asked about Paragraph 4 and 5, which identify a litany of "duties" he opines Clemens Coal Company failed to fulfill, he testified "there are no facts to support that these were done or not done." [Exhibit B, Tilden Depo. tr. 75: 10-15; 77: 3-9]. Regarding his opinion listed in Paragraph 6 of his report, where he affirmatively stated, "A special relationship never existed between Liberty and Clemens because Liberty never offered, nor did it ever to [sic] agree, to perform any of these responsibilities …." Tilden testified that "[t]here's no objective information …." [Exhibit A; Exhibit B, Tilden Depo. tr. 78: 14-22]. When asked about the opinion contained in Paragraph 7, which stated that "based on the … actions of both Liberty … and Clemens … Clemens could not justifiably [expect or rely on][1] Liberty to take affirmative action to procure Black Lung Disease Coverage," Mr. Tilden testified, " I could find no evidence that the black lung was requested …" [Exhibit A; Exhibit B, Tilden Depo. tr 86:15-87:4]. Clearly, Tilden gives Liberty Mutual every benefit of the doubt and draws the inference that the black lung coverage was not requested.

Instead of basing his opinions on established facts, Tilden makes *credibility* determinations and draws inferences without sufficient evidentiary support to decide issues of fact. Tilden should not be permitted to simply tell the jury what result it should reach by implying to the jury that the absence of evidence, evidence which Liberty Mutual is in the best position to produce, weighs in Liberty Mutual's favor. *Parker v. Wal-Mart Stores, Inc.*, 267

---

[1]    Paragraph 7 of Tilden's report did not make sense.  the language bracketed reflects what Woolman believes Tilden intended to convey in Paragraph 7.

F.R.D. 373, 376 (D. Kan. 2010) (stating "The Court will not permit [the expert] to usurp the jury's function by asserting facts in the form of "expert" opinion.")). In *Parker*, this Court excluded expert testimony that involved "determination of facts" and the "drawing [of] inferences which [are] exclusively the province of the jury...." *Parker*, 267 F.R.D. 373, 376 (D. Kan. 2010).

Tilden's opinions are based upon his own credibility determinations and inferences he drew to decide issues of fact about whether Clemens Coal Company requested black lung coverage. Tilden and Liberty Mutual want the jury to accept as true and give "expert" weight to Tilden's determination that Clemens Coal Company did not request black lung coverage, a fact which Tilden's review of the record does not support. The jury is more than capable of examining the evidence to determine if Clemens Coal Company requested such coverage and Tilden's inferences and assumptions on that issue are of no help to the jury.

Notably, when pressed at his deposition, Tilden agrees that if the black lung endorsement was included on the Clemens Coal's previous policy, Liberty Mutual would have had a duty to provide the coverage because it is the custom and practice of an insurance agent to provide the coverage requested. [Exhibit B, Tilden Depo. tr. 59:3-60:4].

Q:      And, again, if those instructions included a policy with the black lung endorsement, then the failure to provide that would be failure to follow the insured's instructions, correct?

Mr. Moothart: Object to form and foundation, incomplete hypothetical.

A:      In that hypothetical, yes, sir.

Evidence will be presented at trial through Ronald V. Srajer that the pervious policy presented to Liberty Mutual to duplicate contained the Federal Coal Mine Health and Safety Act Coverage Endorsement. [Exhibit C: Affidavit of Ronald V. Srajer]. Given Mr. Srajer's testimony,

7

permitting Tilden to testify to the opinions contained in his report would necessarily permit Tilden tell to the jury that his determinations of fact – that Clemens Coal's previous policy did not include the black lung endorsement – are true and to not believe the testimony of testimony of Ronald V. Srajer.

Tilden's credibility determinations, upon which his opinions are based, invade the province of the jury. "This Court will not allow expert testimony that invades the province of the jury or render opinions on issues of law." *Parker*, 267 F.R.D. 373, 375-76 (D. Kan. 2010) (citing *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).

A.    **Tilden Does Not Have Specialized Knowledge That Will Help the Jury Understand the Evidence or Determine a Fact in Issue and Failed to Use and Apply Reliable Methodology**

There is nothing to indicate Tilden has specialized knowledge of what a reasonably prudent and competent insurance agent should do in procuring a policy in Kansas. And, Tilden has failed to use reliable principles and methodology in arriving at his unsupported conclusions.

While it is true Tilden has spent many years in the insurance industry. Tilden does not possess personal knowledge of the duty of care a licensed insurance agent in Kansas owes to a client but instead relies on Woolman's expert to arrive at his opinion stated in Paragraph 1 of his report. [Exhibit A; Exhibit B, Tilden Depo. tr. 39:3-13]. And, on various issues relating to Kansas, Tilden testified that he did not research Kansas Law despite testifying that he takes "the facts and the situation and [applies] it against the policy and the law …." [Exhibit B, Tilden Depo. tr. 71:1-16; 80:3-80:21; 82:-2-4]. Tilden's tacit admission that he failed to do that which he testified he would – ensure that he knew the law so that he could apply the facts "against the policy and the law" – evidences he did not arrive at his opinion using specialized knowledge and that he failed to use and apply reliable principles and methodology. As a result, Tilden should not

be permitted to opine as to what reasonably prudent and competent insurance agent in Kansas, operating under Kansas law would or should do.

Further, the foundation of Tilden's opinion is flawed, and thus his method for reaching is opinions is unreliable. The only identifiable "principles and methodology" used by Tilden, other than applying facts to the policy and the law without first apprising himself of the law, were to give Liberty Mutual every benefit of the doubt at the expense of Woolman. This is evidenced by Tilden's appalling admission that the basis for the opinion he expressed in Paragraph 2 of his report, that "a reasonable and prudent insurance agent and underwriter has a responsibility to act in good faith and follow the instructions of its customers, was *the testimony of Liberty Mutual's agents*.

> Q:     Opinion No. 2 is, "In custom and practice a reasonable and prudent insurance agent and underwriter has a responsibility to act in good faith and follow the instructions of its customers." Did I read that correctly?
>
> A:     Yes, sir.
>
> Q:     And what is the basis for that particular statement or opinion?
>
> A:     The deposition testimony reviewed.
>
> Q:     And which deposition testimony?
>
> A:     Specifically Ms. Trent and Ms. Smith.

[Exhibit B, Tilden Depo. tr. 41:10-20]. To allow Tilden to testify would permit Liberty Mutual to define its own obligations and give its own argument the weight of expert testimony.

Tilden's report contains legal conclusions based upon Tilden's decision to give Liberty Mutual every benefit of the doubt. Tilden's opinions are nothing more than arguments and unsupported determinations of fact masquerading as "expert" opinion.    And while Tilden

testifies he applies the facts to the law, he is ignorant of Kansas law. [Exhibit B, Tilden Depo. tr. 71:1-16; 80:3-80:21; 82:-2-4].    There is no reason Tilden should be allowed to tell the jury Liberty Mutual met its applicable standard of care when Tilden's opinions are based on favoritism, unsupported inferences contrary to the evidence, and ignorance of the law.

**CONCLUSION**

Tilden opinions are unsupported opinions of fact based upon Tilden's own credibility determinations, determinations that invade the province of the jury.  Further, it is evident from Tilden's report and his deposition that the opinions he expressed in his report were not supported by facts, making them meaningless conclusions of law.  Finally, Tilden's report failed to comply with the Federal Rules of Civil Procedure and pursuant to Rule 31(c), this Court should exclude any evidence offered by Tilden.

*Respectfully submitted,*

ENSZ & JESTER, P.C.

| | |
|---|---|
| JAMES H. ENSZ | KS #13040 |
| ROBERT O. JESTER | KS FED #70451 |
| WESLEY J. CARRILLO | KS #23984 |

1100 Main Street, Suite 2121
Kansas City, MO  64105
Telephone:    816-474-8010
Facsimile:    816-471-7910
jensz@enszjester.com
rjester@enszjester.com
wcarrillo@enszjester.com
**ATTORNEYS FOR DEFENDANT WOOLMAN**

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2016, the foregoing was filed with the Clerk of the Court using the electronic filing system which will provide notice and service to all counsel of record and was also served *via* United States mail, first class, postage prepaid to:

Bruce A. Moothart
Ryan J. Watson
Peter K. Andreone
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main St., Suite 310
Kansas City, MO  64112
bruce@sbhlaw.com
ryan@sbhlaw.com
peter@sbhlaw.com
**Attorneys for Plaintiff**

Attorney for Defendant

11