Robert Bryan Tilden, Jr. - 09/18/2015          1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

     Plaintiff,

vs.                        Case No. 2:14-cv-02332-CM-JPO

THE CLEMENS COAL COMPANY,
DENNIS WOOLMAN,
and CLAYTON SPENCER,

     Defendants.


     DEPOSITION OF ROBERT BRYAN TILDEN, JR.,
a witness, taken on behalf of Defendant Woolman,
pursuant to Notice, on the 18th day of September,
2015, at the law offices of SEYFERTH BLUMENTHAL &
HARRIS LLC, 4801 Main Street, Suite 310, Kansas
City, Missouri, before

AVANELLE L. SULLIVAN

for AAA Court Reporting Company, a Registered
Professional Reporter, Certified in Missouri and
Kansas.


APPEARANCES

    For the Plaintiff:
      MR. BRUCE A. MOOTHART
      SEYFERTH BLUMENTHAL & HARRIS LLC
      4801 Main Street, Suite 310
      Kansas City, Missouri 64112

    For the Defendant Woolman:
      MR. ROBERT O. JESTER
      ENSZ & JESTER, PC
      1100 Main Street, Suite 2121
      Kansas City, Missouri 64105

**EXHIBIT**

**B**

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693


AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Robert Bryan Tilden, Jr. - 09/18/2015          35

Q. Have you spent more than 20 hours?

A. I don't believe so.

Q. Have you spent more than 15 hours?

A. It will be somewhere over 5 and less than 20.

Q. On page 3 of Deposition Exhibit 2, you provide a caveat that you reserve the right to amend or supplement the report with respect to any discovery you didn't have a chance to review. Have you amended or supplemented your report?

A. No, sir.

Q. And do you anticipate amending or supplementing it?

A. Not at the present time, sir.

Q. And you indicate on pages 3 and 4 that you have reviewed specified documents. Have you reviewed any new or additional documents not identified in Deposition Exhibit 2?

A. Yes, sir. The deposition of the CPA, I believe Mr. Worley, the 30(b)(6) of IMA -- I believe that's what he was -- and then -- I don't want to mispronounce it -- Mr. Haake's supplemental --

Q. Haake.

A. -- Haake -- supplemental disclosure and his deposition and the IMA production.

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Q.  And did any of those additional items cause you to alter or change your opinion reflected in Deposition Exhibit 2?

A.  No, sir.

Q.  So I can rely on the fact that the opinions reflected in Deposition Exhibit 2 remain consistent even though you've reviewed additional materials; correct?

A.  That's correct.

Q.  Do you want to take a break?

MR. MOOTHART:  Yeah.  I think it's about time.  We've gone an hour.

(A recess was taken.)

MR. JESTER:  Just for the record, I'm going to move to strike Mr. Tilden's report as failing to comply with Federal Civil Procedure Rule 6 (a)(2), specifically Subsection B and Subsections (i) and (ii).

MR. MOOTHART:  What are those particular sections?

MR. JESTER:  (i) is a complete statement of all the opinions the witness will express and the basis and reasons for them, and (ii) is the facts or data considered by the witness in forming them.

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Did I read that correctly?

A. Yes, sir.

Q. Okay. And then you go on to give me how many reasons that that's true?

A. It's numbered 1 through 7 with some subs underneath the numbers.

Q. Okay. And in talking about your opinion and the support for your opinion, am I to believe, then, that Subsections 1 through 7 are the bases or reasons for the opinions?

A. Yes, sir.

Q. Now, the Federal Rules also require that you provide me in your report the facts and data considered by you in forming your opinions. Do 1 through 7 contain those facts and data that you relied on in forming your opinion?

A. The facts and data were the deposition, the written discovery.

Q. And can we agree, then, that in 1 through 7 under Roman numeral I that you do not make specific reference to any facts or data supporting any of the statements contained in 1 through 7?

A. Agree.

Q. Okay. So for that reason, I'm going to need

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

to inquire of you as to what facts and data support those particular statements.

So paragraph 1 you state, "In custom and practice Liberty had a responsibility to use the skill and care which a reasonable and prudent person engaged in the insurance business would use under similar circumstances."

Now, can you please tell me what facts or data you rely on to make that statement?

A.    In Mr. Haake's report, he cited two specific cases that in essence made that statement.

Q.    Now, you use a statement "custom and practice." Now, are you, then, going to be rendering an opinion that this custom and practice applies in the state of Kansas?

A.    To use skill and care which a reasonable and prudent person would engage, yes, sir.

Q.    And you believe that to be the test in the state of Kansas?

MR. MOOTHART:   Object to form.

A.    I believe the test would be a matter of law. I believe my statement is the custom and practice.

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

person" whereas the court recognizes a "reasonably prudent and competent insurance agent or broker."  Do you believe your opinion still complies with that?

A.   A "person" would include an agent or broker.

Q.   And other than Mr. Haake's reference with reference to No. 1, any other facts or data to support that opinion?

A.   No, sir.

Q.   Opinion No. 2 is, "In custom and practice a reasonable and prudent insurance agent and underwriter has a responsibility to act in good faith and follow the instructions of its customers."  Did I read that correctly?

A.   Yes, sir.

Q.   And what is the basis for that particular statement or opinion?

A.   The deposition testimony reviewed.

Q.   And which deposition testimony?

A.   Specifically Ms. Trent and Ms. Smith.

Q.   Now, how do you define in your opinion the phrase "good faith"?

A.   Good faith and fair dealing is implied in all contractual relationships.  The good faith for my definition would be following the

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693



AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Robert Bryan Tilden, Jr. - 09/18/2015          51

A.   In that hypothetical, if it was on the proposal, then I am sure someone would have considered it.

Q.   (By Mr. Jester)   Because the law required, did it not?

A.   For individuals under the law, yes, sir.

Q.   Then in subparagraph 3A you say the record does not indicate that black lung disease coverage was ever requested by Clemens.

Now, is it fair that that's based on your assumption that The Hartford policy from 1995 to 1996 did not contain the black lung endorsement?

A.   I could find no positive or negative evidence related to a request.

Q.   Well, if there was no positive or negative evidence, then how can you say the record does not indicate?

A.   I could find no reference in the record that the coverage was ever requested.

Q.   Okay.   But that does not mean, then, that it wasn't requested; correct?

A.   That's correct.

Q.   And in 3B you say that the record indicates that Liberty would not have provided black

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

A.  "Risk" is a broad term.  The insurance agent has the responsibility to respond to the insured's instructions.

Q.  Right.  Do they have no responsibility to tell the insured, Well, you have a risk for this potential claim and so you should consider this particular coverage?

A.  That is outside of the custom and practice.

Q.  In the normal insurance sales area, that's outside the custom and practice?

A.  Yes, sir.  Let me give you an example.  Anyone could die yesterday.  Under that hypothetical, I would be required, if a person wanted to procure homeowner's insurance, to also sell them life insurance, also sell them disability insurance, et cetera.  So it's just not done.

Q.  But in this particular case, we're not talking about ancillary coverages.  We're talking about a workers' compensation policy being sold to a surface coal mining operation.

        Would the agent not have an obligation to consider potential risks for a surface coal mining company in reference to that sale?

A.  If asked, yes, sir.



8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Robert Bryan Tilden, Jr. - 09/18/2015        60

Q.  Well, what if the insured doesn't have enough knowledge to request or ask?

A.  It's custom and practice for the retail agent to follow the insured's instructions.

Q.  All right.  So it's not a custom and practice for a retail insurance agent to inquire into the nature of the industry, the business, the number of employees, the nature of the risks exposed to by those employees -- none of that is normal in the industry?

A.  In your question you blended exposure base, number of personnel, et cetera, with some dynamic factors.  Setting aside exposure, payroll receipts, number of employees, if the instructions to the agent are to duplicate the coverage, then at that point the agent would follow the insured's instructions and duplicate the coverage they have.

Q.  Does the sales agent have an obligation to examine the exposure that that potential insured has and make recommendations based on the exposure?

A.  If asked, yes, sir.

Q.  All right.  Well, in a surface coal mine operation, if you ask how many workers are

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693


AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Coal Company to receive and review and to read the policy. Is that true in the state of Kansas?

A. It's generally true around the world, sir.

Q. All right. But is it true in the state of Kansas?

A. I haven't looked at that matter in Kansas, sir.

Q. Right. Would it surprise you to know that Kansas doesn't require that the policy be read?

MR. MOOTHART: Object; misstates law, form and foundation.

Q. (By Mr. Jester) Have you done any research as far as what Kansas requires?

A. No, sir.

Q. All right. So you don't know whether or not the Kansas courts have said that the necessity of reading the policy is not a part of their particular test with reference to an insured's claim?

MR. MOOTHART: Object to the form, foundation.

A. I haven't researched that particular matter. Insurance agents and underwriters rely on the

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Robert Bryan Tilden, Jr. - 09/18/2015          75

A.   It was put on at inception, yes, sir.

Q.   Okay.  And do we know whether or not that was offered by the agent or part of the prior policy?

A.   Could not ascertain from the prior policy.

Q.   But at least there were optional coverages, at least that were made a part of the policy; correct?

A.   That's correct.

Q.   So if I review paragraph 4 of your opinion and the subparts, we do not have facts or data to support numerous of the statements made by you; is that correct?

A.   There are no facts to support that these were done or not done.

Q.   Right.  But you're saying because they were not done, it's the Clemens Coal responsibility they were not done.  Is that what you're saying?

A.   No, sir.  I'm saying this is the expectation of an agent or an underwriter in the insurance marketplace that the insured participates in the application and review of the policy process.

Q.   All right.  And in this particular instance,

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693



AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

above it in No. 4?

A.   That is correct.

Q.   Okay.  And that's assuming that Clemens Coal Company didn't comply with any of those responsibilities; correct?

A.   That's correct.

Q.   Because you have no actual knowledge as to whether they did or didn't, do you?

A.   That's correct.

Q.   And the same responsibility or same comment could be made reference to the agent in that they failed to perform certain responsibilities, couldn't it?

A.   The testimony is the testimony.

Q.   And --

A.   Everybody's memory is very weak after 20 years.

Q.   All right.  So Clemens may have failed to perform responsibilities and the agent may have failed to perform responsibilities.  We don't know because there's no testimony to support that particular opinion one way or the other; correct?

A.   That is correct.

Q.   No. 6.  "A special relationship never existed

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Robert Bryan Tilden, Jr. - 09/18/2015          78

between Liberty and Clemens because Liberty never offered, nor did it ever agree to" -- or "to agree to perform any of these responsibilities, nor did Liberty offer risk management services.

"In addition, Liberty never received additional compensation for consulting and advice based on these objective criteria. It appears that an ordinary insurance agent/insurance company-customer relationship existed between Liberty and Clemens." Did I read that correctly?

A. Yes, sir.

Q. Now, what's a "special relationship"?

A. When the insurance agent agrees to assume a responsibility for the insured.

Q. And in this particular case, we don't know whether that occurred; correct?

A. That is correct.

Q. There's no testimony one way or the other?

A. There's no objective information, that is correct.

Q. All right. So there's no facts or data upon which you can say that it's your opinion that a special relationship never existed; correct?

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Robert Bryan Tilden, Jr. - 09/18/2015          80

all she did was ask for the policy.

A.   That's correct.

Q.   Okay.  And so where does this requirement of a special relationship come in to consideration in this case?  Is that something required under Kansas law?

A.   I am not an attorney and do not feel qualified to talk about Kansas law.  However, there are situations where an insurance agent will do additional services for the insured and take over certain of the insured's responsibilities.

Q.   And there are no facts to support that that occurred here?

A.   That is correct.

Q.   And there's no facts to support it didn't occur here; correct?

          MR. MOOTHART:   Object to form.

A.   Other than what the agent testified to, what the CPA testified to, no, sir.

Q.   (By Mr. Jester)  All right.  The only place I found the term "special relationship" was a North Carolina case.  You're from North Carolina; correct?

A.   That's correct.



8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

foundation.

A.  You take the facts and the situation and you apply it against the policy and the law, that's correct, sir.

Q.  (By Mr. Jester)  Okay.  And that's something that you've been doing since 1978; correct?

A.  Yes, sir.

Q.  Did you realize that this particular agent had the ARM designation, Associated Risk Management?

A.  I saw in the testimony, yes.  I don't recall what year.

Q.  She indicated that she, by her testimony, would have had that designation at the time this policy was written.

A.  I'll accept that.

Q.  Okay.  And would any of the training that she received in receiving that designation have been used or applied by an agent in the sale of policies?

A.  The associate in risk management designation looks at risk handling techniques other than insurance.

Q.  But insurance is a risk transfer technique considered by a risk manager, is it not?

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

opinions or choices with reference to coverage, didn't she?

A.   That's correct.

Q.   I believe she characterized her role on page 64 of her deposition, line 2 -- she was asked, "So, basically, you were the happy face that walked in and said, "Could I sell you some insurance?"

     And her answer was, "Yes."  Do you remember reading that?

A.   Not specifically.

Q.   Okay.

     MR. MOOTHART:  Why are you smirking? That's your characterization.

Q.   (By Mr. Jester)  All right.  Number 7, you indicate, "Based on the responsibilities and actions of both Liberty as the insurance company and insurance agent, and Clemens as the insured, Clemens could not justifiably expected [sic] or relied on Liberty to take affirmative action to procure black lung disease coverage."  (Quoted as read.)

     I'm not sure I read that correctly but tell me what you meant.

A.   I could find no evidence that the black lung

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com

Robert Bryan Tilden, Jr. - 09/18/2015    87

was requested, and I could find no evidence that Liberty agreed to do a risk management survey or assume any responsibilities to procure the coverage.

Q. Okay. But you did see a policy from 1994 to '95 that had the black lung coverage on it for Clemens coal, did you not?

MR. MOOTHART: Object to form. Misstates the record.

A. There was a Travelers policy that had an endorsement on it, yes, sir.

Q. (By Mr. Jester) Right. And you did see the -- you told me it wasn't a declaration page. And I don't remember --

A. Information page.

Q. Information page that indicated that The Hartford policy had a significant additional premium charge for occupational disease loading factor, did you not?

A. That's correct. But in the hypotheticals we're dealing with, that assumes that one of those two policies would have been given to the retail agent. I did see a declination in -- I don't recall which file -- that one of the earlier Hartford policies did not have

8001 Conser, Suite 200
Overland Park, KS 66204
(913) 385-2699 · Fax 385-2693

AAA COURT REPORTING

Toll Free (800) 205-7930
www.aaacourtreporters.com
mail@aaacourtreporters.com